**<u>Exhibit A – Settlement Agreement</u>**

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (this "**Agreement**") is made and entered into by and between Sarah L. Fowler, solely in her capacity as Trustee for the Bankruptcy Estate of EnerDel, Inc. and as Trustee for the Bankruptcy Estate of Ener1, Inc. ("**Trustee**") and Bzinfin, S.A. ("**Bzinfin**"), for itself and in its capacity as Administrative Agent for the Secured Parties (as both terms are defined below). The Trustee and Bzinfin are each individually a "Party" and are collectively referred to below as the "Parties."

## RECITALS

A.  On July 13, 2023 (the "**Petition Date**"), EnerDel, Inc. ("**EnerDel**") filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") as Case No. 23-02996 (the "**EnerDel Case**") in the Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "**Bankruptcy Court**").

B.  On the same date, EnerDel's parent company, Ener1, Inc. ("**Ener1**"; together with EnerDel, the "**Debtors**"), also filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code as Case No. 23-02997-RLM-7 (the "**Ener1 Case**"; together with the EnerDel Case, the "**Bankruptcy Cases**").

C.  The Trustee is the duly appointed and acting trustee in each of the Bankruptcy Cases.

D.  On August 9, 2023, Bzinfin filed Proof of Claim No. 3 in the EnerDel Case asserting a claim in the total amount of $70,350,362 secured by all assets of EnerDel (the "**EnerDel Claim**") arising from a Term Loan in the principal amount of $44,991,402 (the "**Term Loan**"), an Interim Term Loan in the principal amount of $10,421,715 (the "**Interim Term Loan**"), and a loan based on a Promissory Note dated March 2, 2023 in the principal amount of $350,000 (the "**ALF Loan**") in favor of ALF Consulting SA ("**ALF Consulting**"; together with Bzinfin, the "**Secured Lenders**").

E.  The *Attachment to Proof of Claim* filed as part of the EnerDel Claim set forth the amounts Bzinfin asserted it is owed by EnerDel and had the following documents attached:

> Exhibit A – the Loan Agreement dated March 30, 2012, by and among, *inter alia*, Ener1 as borrower, EnerDel, as a guarantor, Bzinfin, in its capacity as successor administrative agent and collateral agent (the "**Administrative Agent**"; together with the Secured Lenders, the "**Secured Parties**") and certain lender parties (the "**Loan Agreement**").

Exhibit B – the Collateral Agreement dated March 30, 2012, by and among, *inter alia*, Ener1 as borrower, EnerDel, as a guarantor, the Administrative Agent, and certain lender parties (the "**Collateral Agreement**"); and

Exhibit C – a Promissory Note dated March 2, 2023 in the principal amount of $350,000 in favor of ALF Consulting (the "**ALF Note**").

F. On August 9, 2023, Bzinfin filed Proof of Claim No. 2 in the Ener1 Case asserting the same claim against Ener1 arising from the same documents and secured by all assets of Ener1 (the "**Ener1 Claim**"). The *Attachment to Proof of Claim* contained the same information and exhibits as the EnerDel Claim.

G. Following a request by the Trustee for additional information and documentation, Bzinfin amended both the EnerDel Claim and the Ener1 Claim on October 23, 2024, to attach the following additional documents to both the EnerDel Claim and the Ener1 Claim:

Exhibit D – a UCC-1 financing statement with respect to Bzinfin's security interest in Ener1's collateral;

Exhibit E – a UCC-1 financing statement with respect to Bzinfin's security interest in EnerDel's collateral;

Exhibit F – a reconciliation of the Term Loan and the Interim Term Loan; and

Exhibit G – a reconciliation of the ALF Loan.

H. Although it was not attached to either the EnerDel Claim or the Ener1 Claim, Bzinfin apparently acquired its interest in the Loan Agreement and the Collateral Agreement pursuant to an Assignment and Assumption Agreement with an Effective Date of November 27, 2013 (the "**Assignment**").

I. Nearly all the assets of the Debtors on which Bzinfin, in its capacity as the Administrative Agent, purports to have a perfected, first-priority lien on behalf of the Secured Parties pursuant to the Loan Agreement, Collateral Agreement, and Assignment (the "**Collateral**") have been liquidated by the Trustee pursuant to the following orders of the Bankruptcy Court:

    i. *Order Granting Motion to Sell Property Free and Clear of Any Interest by Public Auction with No Previously Identified Initial*

       *Bidder* entered in the EnerDel Case as Doc. No. 104 on October 20, 2023;

    ii.    *Order Granting Motion to Sell Property Free and Clear of Any Interest by Private Sale to Cuberg, Inc.* entered in the EnerDel Case as Doc. No. 135 on January 8, 2024;

    iii.    *Order Granting Motion to Approve Compromise and Settlement Pursuant to Fed. R. Bankr. P. 9019* entered in the EnerDel Case as Doc. No. 186 on June 21, 2024; and

    iv.    *Order Granting Motion to Sell Property Free and Clear of Any Interest by Public Auction with No Previously Identified Initial Bidder* entered in the Ener1 Case as Doc. No. 69 on October 20, 2023.

J.    As a result of the liquidation of the Collateral, the Trustee recovered gross proceeds in the amount of $1,042,275 (the "**Sale Proceeds**").

K.    After reviewing the EnerDel Claim and the Ener1 Claim along with additional documents and information obtained by the Trustee, the Trustee asserts there are grounds to object to the allowance of both the EnerDel Claim and the Ener1 Claim in their entirety. To the extent any portion of either the EnerDel Claim or the Ener1 Claim were allowed, the Trustee also asserts there are grounds to avoid the perfection of the Administrative Agent's lien on the Collateral based on Bzinfin's status as an insider of the Debtors.

L.    Bzinfin asserts that the Trustee will not succeed on her objections to the EnerDel Claim and the Ener1 Claim and maintains that, in its capacity as the Administrative Agent, it has valid, first-priority liens on the Collateral in favor of the Secured Parties and an unsecured deficiency claim for the remaining amounts the Secured Lenders are owed that exceeds the value of the Debtors' assets.

M.    To avoid unnecessary litigation and costs to both Parties, the Parties have agreed to resolve all claims and disputes that may exist between them on the terms set forth more specifically herein.

N.    By entering into this Agreement, the Parties desire to resolve any and all matters and claims arising in or relating to the Bankruptcy Cases, the EnerDel Claim, the Ener1 Claim, the Term Loan, the Interim Loan, the ALF Loan, the Loan Agreement, the Collateral Agreement, the Assignment, the Collateral, the Sale Proceeds, and all other amounts alleged owed to the Secured Parties by the Debtors arising out of any agreement or document, whether or not specifically identified herein.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the promises, mutual covenants, and releases contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals.** The foregoing recitals are true and correct and are incorporated herein by reference.

2. **Bzinfin's Representations and Warranties.** Bzinfin hereby represents and warrants to the Trustee each of the following:

    a. Bzinfin has taken all necessary action to authorize the execution, delivery, and performance of this Agreement. Assuming due authorization, execution, and delivery by the Trustee, this Agreement and all obligations of Bzinfin hereunder are the legal, valid, and binding obligations of Bzinfin, enforceable in accordance with the terms of this Agreement.

    b. Bzinfin is the sole legal and beneficial owner and holder of the Term Loan and the Interim Term Loan and all rights arising therefrom and documents related thereto, free and clear of any and all liens, claims, encumbrances, and adverse claims as to ownership created by Bzinfin.

    c. ALF Consulting is the sole legal and beneficial owner and holder of the ALF Loan and all rights arising therefrom and documents related thereto, free and clear of any and all liens, claims, encumbrances, and adverse claims as to ownership created by ALF Consulting.

    d. Bzinfin, in its capacity as the Administrative Agent, has full right and authority to settle and release the EnerDel Claim and the Ener1 Claim on behalf of the Secured Parties pursuant to this Agreement.

    e. The execution, delivery and performance of this Agreement and the releases contemplated herein do not require the approval or consent of any other person or entity or the authorization, consent, approval of or any license or permit issued by, or any filing or registration with, or the giving of any notice to, any court, department, board, commission, or other governmental agency or authority other than those already obtained.

3.  **Indemnification for Breach of Representations and Warranties.** Bzinfin hereby agrees to indemnify, hold harmless, and defend the Trustee and her successors and assigns, representatives, attorneys, professionals, agents, and employees (collectively, the "**Indemnified Parties**") from and against any and all losses, causes of action, liabilities, claims, demands, obligations, damages, costs and expenses, including reasonable attorneys' and accountants' fees and costs, to which any of the Indemnified Parties may become subject arising out of or relating to a breach of any of the representations or warranties set forth in paragraph 2 of this Agreement.

4.  **Allowance of EnerDel Claim and Ener1 Claim by Trustee.** In full satisfaction of the EnerDel Claim and the Ener1 Claim, and upon Bankruptcy Court Approval, Bzinfin shall have an allowed secured claim in the total amount of $100,000 in the EnerDel Case (the "**Allowed Claim**"), and the Ener1 Claim in the Ener1 Case shall be disallowed in its entirety. Bzinfin shall not have any other claim in either of the Bankruptcy Cases, including but not limited to any deficiency claims, other than the Allowed Claim in the EnerDel Case.

5.  **Payment of Allowed Claim.** Within ten days of Bankruptcy Court Approval, the Trustee shall make a distribution to Bzinfin, or its designated agent, in the total amount of $100,000 (the "**Settlement Distribution**") from the Sale Proceeds in full satisfaction of the Allowed Claim. The check shall be payable to "Holland & Knight LLP" and mailed to the following address: Holland & Knight LLP, for the benefit of Bzinfin, S.A., P.O. Box 936937, Atlanta, GA 31193-6937.

6.  **Trustee's Release of Claims.** Upon Bankruptcy Court Approval, and except as expressly set forth herein, the Trustee (solely in her capacity as chapter 7 trustee for Debtors' bankruptcy estates), for the Debtors' bankruptcy estates, herself, and her and their successors and assigns, representatives, attorneys, professionals, agents, and employees, releases and forever discharges Bzinfin, ALF Consulting, the Secured Parties, and, as applicable, their respective parents, subsidiaries, affiliates, partners, principals, successors and assigns, directors, officers, representatives, attorneys, shareholders, agents and/or employees (collectively, "**Bzinfin Releasees**"), from any matter or claim relating to the Debtors, their businesses, operations, or bankruptcy estates, or arising out of or relating to the Bankruptcy Cases, the EnerDel Claim, the Ener1 Claim, the Term Loan, the Interim Loan, the ALF Loan, the Loan Agreement, the Collateral Agreement, the Assignment, the Collateral, the Sale Proceeds, any other amounts owed, or alleged to be owed, by Bzinfin Releasees to Debtors arising out of any transfer, agreement, or document, or any action Bzinfin Releasees may have taken or failed to take with respect to the Debtors, in any capacity, whether or not specifically identified herein, or that was or could have been asserted in the Bankruptcy Cases or otherwise on behalf of the Debtors' bankruptcy estates; *provided however*, that nothing in this release or this Agreement shall release or in

5

any way affect any interest the Trustee may have in any D&O insurance policy on which Bzinfin may be or have at any time been an insured, including but not limited to, Axis Privatus Platinum Policy No. P-001-000928063-01 issued by Axis Insurance Company to the Debtors on or about June 6, 2022.

7. **Bzinfin's Release of Claims.** Upon Bankruptcy Court Approval, and except as expressly set forth herein, Bzinfin, on behalf of itself and the other Secured Parties, and, as applicable, their parents, subsidiaries, affiliates, partners, principals, predecessors, successors and assigns, directors, officers, representatives, attorneys, shareholders, agents and/or employees releases and forever discharges the Debtors, their bankruptcy estates, the Trustee, and their successors and assigns, representatives, attorneys, professionals, agents, and employees from any matter or claim arising out of or relating to the Bankruptcy Cases, the EnerDel Claim, the Ener1 Claim, the Term Loan, the Interim Loan, the ALF Loan, the Loan Agreement, the Collateral Agreement, the Assignment, the Collateral, the Sale Proceeds, any other amounts alleged owed to Bzinfin by Debtors arising out of any agreement or document whether or not specifically identified herein, or that was or could have been asserted in the Bankruptcy Cases; provided, however, nothing herein releases Bzinfin's claims and interest in the Settlement Distribution.

8. **Bankruptcy Court Approval.** Within five business days of the execution of this Agreement by all Parties, the Trustee shall file a Motion to Compromise and Settle Claims in each of the Bankruptcy Cases requesting that the Bankruptcy Court approve this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**9019 Motion**"). The Parties acknowledge that this Agreement and all obligations contained herein are contingent upon Bankruptcy Court Approval. "**Bankruptcy Court Approval**" means that the Bankruptcy Court in each of the Bankruptcy Cases shall have entered a Final Order (as defined below) that approves this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. If the Bankruptcy Court does not substantially approve this Agreement in each of the Bankruptcy Cases, then this Agreement, and all of the obligations contained herein shall be null and void, and the releases provided herein shall be of no effect.

9. **Final Order.** "**Final Order**" means an order or judgment of the Bankruptcy Court in each of the Bankruptcy Cases as entered on the docket of such court, which order has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any motion for review or rehearing filed, appeal taken, or petition for certiorari filed has been resolved by the highest court to which the order or judgment was or may be appealed or from which certiorari was or may be sought.

10. **Contributions to Preparation of Agreement.** The Parties acknowledge, covenant, and agree that each of them has read this Agreement and understand its terms, including the legal consequences thereof, and that in offering to make, and in making, executing, and delivering this Agreement, none of them was acting under any duress, undue influence, misapprehension, or misrepresentation by any Party or any agent, attorney, or representative of any Party, and that this Agreement was made, executed, and delivered as the free and voluntary act of each Party and was given in good faith on the part of each Party with full knowledge of all relevant facts and circumstances as presented. The Parties further acknowledge that each of them was represented by counsel in connection with this Agreement or had the opportunity to consult with counsel of its own choosing prior to execution of this Agreement.

11. **Entire Agreement.** Except as otherwise provided, this Agreement and all documents contemplated by this Agreement contain the entire agreement between the Parties with respect to the subject matter hereof and no representations or promises, other than those contained or referred to herein, have been made by any Party to any other Party to secure the execution of this Agreement.

12. **Further Documents.** The Parties agree to execute and deliver all such other and additional documents or instruments and perform all such acts, in addition to execution and delivery of this Agreement and performance of the Parties' obligations hereunder, as are reasonably required from time to time to carry out the purposes of this Agreement.

13. **Choice of Law and Jurisdiction.** This Agreement will be governed and construed under the laws of the State of Indiana and applicable law under the Bankruptcy Code. The Bankruptcy Court shall have exclusive jurisdiction over the Parties to enforce this Agreement.

14. **No Admission of Liability.** The Parties understand and acknowledge that this Agreement constitutes a compromise of disputed claims and is not to be construed as an admission of liability on the part of any Party, and that each Party expressly denies any and all liability.

15. **Attorneys' Fees.** The parties shall pay their own respective attorneys' fees, costs, and expenses; *provided however*, that in the event an action is commenced by any Party to enforce the provisions of this Agreement, the prevailing Party shall be entitled to an award of its costs and expenses, including reasonable attorneys' fees, incurred in connection with enforcing this Agreement.

16. **Binding Effect.** This Agreement inures to the benefit of, and is binding upon, the Parties and their respective heirs, executors, administrators, legal representatives, successors and assigns, and any trustees in bankruptcy.

17. **Captions.** The captions to the various paragraphs of this Agreement are for convenience only and are not part of the Agreement.

18. **Severability.** If any provisions of this Agreement are determined to be invalid or unenforceable for any reason, such determination will not affect the validity of the remainder of the Agreement, including any other provision of the Agreement. If a court finds that any provision of this Agreement is invalid or unenforceable, but that modification of such provision will make it valid or enforceable, then such provision will be deemed to be so modified.

19. **Waiver.** The waiver by any Party of a breach by another Party of any provision of this Agreement will not operate or be construed as a waiver of any subsequent or different breach by the Party.

20. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute the same Agreement.

21. **No Oral Modifications.** No waiver, modification, amendment, discharge, or change of this Agreement, except as otherwise provided herein, shall be valid unless the same is in writing and signed by the Parties against whom the enforcement of such modification, waiver, amendment, discharge, or change is sought. No waiver of any particular provision shall constitute a waiver of any other provision of this Agreement. Any such waiver or consent shall be effective only in the specific instances and for the purpose specifically stated therein.

22. **WAIVER OF JURY TRIAL.** THE PARTIES EACH VOLUNTARILY, KNOWINGLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) BETWEEN OR AMONG THE PARTIES AND/OR ANY THIRD PARTIES ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

23. **Authority to Execute.** Each person signing this Agreement represents and warrants that such person has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of such Party, to bind such Party to the terms and conditions of this Agreement, and to act with respect to the rights and claims that are being resolved, altered, or otherwise affected by this Agreement.

24.     **Electronic Execution.** This Agreement may be executed using an electronic signature of the individual authorized to sign on behalf of the respective Party, which signature will be deemed an original signature and will be binding on such Party. Any executed original of this Agreement that is transmitted through electronic means shall be binding and deemed an original for the purposes of implementing and enforcing this Agreement.

Executed and agreed:

Date: 1/16/25

**Trustee**

Sarah L. Fowler, as Trustee of the Bankruptcy Estate of EnerDel, Inc.

Date: 1/16/25

**Trustee**

Sarah L. Fowler, as Trustee of the Bankruptcy Estate of Ener1, Inc.

Date: _____

**Bzinfin**

Bzinfin, S.A.

By: A. Auriti

Title: Director

10